UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>JEFFREY WEBER,<br><br>                    Defendant. | No. 18-cr-641 (RJS)<br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

Defendant Jeffrey Weber, who is currently serving a ten-year sentence following his guilty plea to one count of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b), moves for a reduction of his sentence under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 45 ("Weber Mot.").) The government opposes that motion. (Doc. No. 47.) For the reasons discussed below, Weber's motion is DENIED.

In January 2018, Weber responded to a Craigslist post that advertised "a younger girl looking for an older guy." (Doc. No. 33 ("PSR") ¶ 8.) Unbeknownst to Weber, the post was a sting operation, so that Weber was actually corresponding with an undercover detective who was using the pseudonym "Rebecca." Rebecca immediately told Weber that she was only thirteen, and when Weber asked for a photograph, Rebecca sent him one of a pre-pubescent girl. (*Id.* ¶ 12.) Within a day, Weber began asking Rebecca overtly sexual questions and soon began planning a sexual encounter with her. (*Id.* ¶¶ 14(a)–(g), 16(a)–(d).) Weber stated multiple times via email that he knew this would be "illegal" because Rebecca was a minor; he even referred explicitly to the "laws of New York state" and the fact that its age of consent was seventeen. (*Id.* ¶¶ 14(d)–(f), 16(a).) Even so, Weber pressed on, at one point telling Rebecca that "I am SURE this is something

that I DEFINITELY want to do.  I am aware of the risk involved but I want to do this with you." (*Id.* ¶ 16(d).)  Weber eventually set up a meeting on Valentine's Day 2018, when he and Rebecca agreed to meet at a diner in Manhattan and then go to Rebecca's apartment to engage in sexual activity.  (*Id.* ¶ 18.)  Weber arrived at the diner as scheduled with a bag of sexual paraphernalia, including condoms and lubricant.  (*Id.* ¶ 20.)  Weber was arrested on the spot and admitted that he was planning to have sex with a minor.  (*Id.* ¶ 21.)  He was charged with one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), to which he subsequently pleaded guilty.  (Doc. Nos. 1, 20, 29.)  The Court ultimately sentenced Weber to a mandatory-minimum term of ten years' imprisonment.  (Doc. No. 39.)  He is currently in the custody of the federal Bureau of Prisons ("BOP") and is housed at the Fort Dix Federal Correctional Institution in New Jersey.  (*See* Doc. No. 45.)

Having served just over half of his 120-month sentence, Weber now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that extraordinary and compelling reasons warrant his early release.  (Weber Mot. at 1.)  *First*, he asserts that an assortment of health issues – including his age, weight, hypertension, coronary artery disease, heart failure, polycythemia, and obstructive lung disease – put him at a high risk of complications if he were to contract COVID-19.  (*Id.* at 4.)  *Second*, Weber argues that the BOP's alleged failure to treat his polycythemia – a blood disorder – is itself a compelling reason to reduce his sentence.  (*Id.* at 19.)  *Finally*, Weber maintains that mitigating factors, like his volunteer work and almost spotless disciplinary record, counsel in favor of a reduced sentence under section 3553(a).  (*Id.* at 23.)

The Court "may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  In the

2

First Step Act of 2018, Congress authorized courts to grant, in their discretion, a sentence reduction to a defendant who makes a showing of "extraordinary and compelling reasons" that warrant such a reduction, after the court has "consider[ed] the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A).  To qualify for such a reduction, a defendant must *both* "satisf[y] . . . the [section] 3553(a) factors" and make a showing of "extraordinary and compelling reasons" supporting a reduction.  *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).  Following the November 1, 2023 amendments to the Sentencing Guidelines, courts are to assess "extraordinary and compelling reasons" within the framework of U.S.S.G. § 1B1.13, even when the motion is brought by a defendant rather than the BOP.  *See United States v. Giattino*, No. 90-cr-424 (MKB), 2023 WL 4867564, at *2 n.2 (E.D.N.Y. July 31, 2023).  Even so, courts may still decide compassionate release motions based on the section 3553(a) factors alone: "when a district court denies a defendant's motion under § 3582(c)(1)(a) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Keitt*, 21 F.4th at 69.

While the Court acknowledges Weber's health issues and commends him for his positive conduct while incarcerated, the Court remains convinced that Weber's initial sentence of 120 months' imprisonment is appropriate in light of the section 3553(a) factors.  As the Court stressed during sentencing, Weber's conduct was "very, very serious" (Doc. No. 43 ("Sentencing Tr.") at 36), and almost "chilling" in its planning (*id.* at 35).  Over the course of several weeks, Weber fostered an overtly sexual conversation with someone he thought (and apparently hoped) was only thirteen years old.  He made concrete plans to meet his intended victim and showed up as scheduled with sexual paraphernalia.  The record reflects that Weber would have carried out his plans too, as

he expressed – multiple times over – that he knew having sex with "Rebecca" was illegal but he would do it anyway. As the Court put it at sentencing, this was "one of the most serious crimes that get prosecuted in a federal court, because of the nature of the [intended] victim." (*Id.* at 36; *see also id.* at 35–56 ("It's kind of a terrifying scenario that there would be people who would communicate with a 13-year-old and try to induce a 13-year-old to engage in sexual activity with an adult.").) Moreover, the Court recognized that there was a heightened need for specific deterrence in Weber's case, given his brazen commitment to carrying out his plan despite "an awareness of penalties and illegality and consequences of being arrested." (*Id.* at 23.) Finally, the Court noted that Congress's designation of a ten-year mandatory-minimum sentence for such conduct underscored the general need to deter "others from committing crimes like this in the future." (*Id.* at 11.)

      Weber's submission does little to neutralize these factors. Weber mostly argues that his chronic health conditions justify an early release, asserting that those conditions predispose him to COVID-19 complications (Weber Mot. at 5), and that the BOP has been slow to treat them (*id.* at 19, 29 (referencing Weber's polycythemia, hernia, and heart disease)). Those arguments, however, generally bear not on the section 3553(a) factors but on whether Weber has established extraordinary and compelling circumstances justifying a reduction in his sentence. *See* U.S.S.G. § 1B1.13(b) (defining how "medical circumstance" can amount to extraordinary and compelling reasons). And to the extent that Weber's arguments *do* implicate the section 3553(a) factors, they do not alter the Court's conclusion that no sentence reduction is justified. Whether or not Weber's contentions about his health are true, the fact remains that he committed a serious crime in blatant disregard of its consequences. The Court therefore remains convinced that a sentence of less than 120 months would undermine the objectives of sentencing set forth in section 3553(a).

Beyond his health arguments, Weber also maintains that he merits an early release because he has close family ties and a support network, because he has an almost spotless disciplinary record while incarcerated, and because he has made laudable efforts to volunteer and help others while in prison.  (Weber Mot. at 25–27.)  However, the Court already considered these factors – or those like them – when it imposed Weber's sentence.  (*See* Sentencing Tr. at 15, 32, 37 (crediting Weber's clean criminal history, strong family relationships, and volunteer work during his presentence detention).)  And while Weber's continuing strides in his rehabilitation and ongoing commitment to supporting his fellow inmates on suicide watch are unquestionably commendable (*id.* at 25; Weber Mot. at 25), Congress has instructed courts to consider *all* the "factors set forth in section 3553(a)" when deciding motions for compassionate release, 18 U.S.C. § 3582(c)(1)(A).  Here, the Court remains convinced that the other section 3553(a) factors – most notably the need to provide just punishment and deterrence – still warrant a sentence of 120 months.  *See, e.g.*, *United States v. Sanchez*, No. 01-cr-74 (PAC), 2022 WL 4298694, at *5 (S.D.N.Y. Sept. 19, 2022) (concluding that despite the defendant's rehabilitation, the section 3553(a) factors weighed against modifying the defendant's sentence); *United States v. Frias*, No. 01-cr-307 (JFK), 2022 WL 3700088, at *2 (S.D.N.Y. Aug. 26, 2022) (same); *United States v. Davis*, No. 12-cr-712 (SHS), 2020 WL 3790562, at *5 (S.D.N.Y. July 7, 2020) (same).

### III. Conclusion

For the reasons set forth above, the Court remains convinced that Weber's mandatory-minimum sentence of 120 months is sufficient, but not more than necessary, to meet the various objectives of sentencing set forth in section 3553(a).  Accordingly, Weber's motion for compassionate release is, respectfully, DENIED.  The Clerk of Court is respectfully directed to

terminate the motion pending at Doc. No. 46 and mail a copy of this Order to Weber at his current address.

SO ORDERED.

Dated:　　November 27, 2023
　　　　　　New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation